Argued March 4, affirmed April 13, 1920.

## CHASE *v.* LA MOREE.

(188 Pac. 959.)

**Banks and Banking—Evidence Held to Show Payment of Debt Collaterally Secured.**

1. Evidence *held* to show that a debt to a bank, to secure which a mortgage and note were given by the holder, a third party, to the bank, had been paid, so that the right to the note and mortgage revested in the original holder thereof, as against assignee of one to whom bank had returned them.

From Multnomah: GEORGE W. STAPLETON, Judge.

Department 1.

This is a suit to foreclose a mortgage upon real estate. The complaint is in the usual form, the plaintiff being the assignee of the instruments upon which the suit is based. The defendants answered, declaring their readiness to pay the note secured by the mortgage, and brought the money into court, alleging that Michler, the payee named in the note and mortgage, claimed that they were still his property, and asked that Michler be made a defendant, and thereafter, pursuant to an order of the court, Michler filed his answer and cross-complaint, to which a reply was filed, and a

trial had, resulting in a decree in favor of defendant Michler, from which plaintiff appeals.    The facts are set out in the opinion.                    AFFIRMED.

For appellant there was a brief over the name of *Messrs. Platt & Platt,* with an oral argument by *Mr. H. G. Platt.*

For respondent there was a brief and an oral argument by *Mr. Maurice W. Seitz.*

BENSON, J.—1. Upon the deposit of the money with the clerk of the trial court, the suit was dismissed as to the defendant La Moree, and proceeded between plaintiff and defendant Michler for the purpose of determining to which of them the money should be awarded.    The problem presented is simply a question of fact.    The evidence is somewhat conflicting and in many respects unsatisfactory, but a careful investigation of the record convinces us that the following details are established by a preponderance of the evidence.    E. H. Corbett was indebted to the Lumbermen's National Bank of Portland, in the sum of $1,750, with accrued interest, the debt being evidenced by two notes, one maturing September 17, 1910, and the other October 1, 1910.    Upon the maturity of the second note, the bank demanded immediate payment, which Corbett was unable to make, and he asked for an extension of time thereon.    This was agreed to by the bank, upon the condition that he should furnish security for their ultimate payment.    Corbett had nothing which could serve as such security, and therefore he applied to his friend Michler to furnish the necessary collateral, saying that he was threatened by the bank with criminal prosecution for having misrepresented his financial circumstances, and Michler, to save his friend from im-

pending disgrace, and upon the assurance that Corbett's father, then living in Brooklyn, New York, would soon come to Portland for the purpose of paying his son's debt, and that the collateral would then be returned to its owner, delivered to Corbett the note in controversy, having indorsed it in blank. Corbett deposited the note with the bank as collateral, and a few days later, at the request of the bank, Michler executed to it an assignment of the mortgage security. Early in the month of May, following, C. H. Corbett, Sr., the father of E. H. Corbett, did come to Portland for the purpose of adjusting his son's financial affairs. The son explained fully to his father the terms and conditions under which the La Moree note and mortgage had been hypothecated. C. H. Corbett, Sr., paid to the bank the sum due upon the two notes of E. H. Corbett, and after they had been indorsed by the bank without recourse, he gave them to his son, who tore off his signature and kept the canceled paper. The father also paid several other of his son's obligations, and exacted from the son a new note covering all of such payments, the face of the new note being $4,567.16. When the father handed to his son the two notes above mentioned, the latter reminded the father that the La Moree notes were owned by Michler, and asked permission to return them to the owner, but the father said that he would himself return them. However, they were never returned, and C. H. Corbett, Sr., went back to Brooklyn, and, so far as the record discloses, never made any effort to collect either the new note exacted from his son, or the La Moree note, although the latter matured on September 1, 1912, and nothing occurs in regard to either of them until after the death of C. H. Corbett, Sr., the exact date of which does not appear, although it does appear that C. H. Corbett, Jr., became an executor of

the father's estate in March or April, 1918, and discovered the La Moree note and mortgage among his father's papers, and he and his coexecutrix assigned the collateral note and mortgage to the plaintiff on April 29, 1918, nearly six years after maturity, and the son's note for $4,567.16, which plaintiff contends was secured, *pro tanto,* by the La Moree note, was not assigned with the collateral. E. H. Corbett, the original debtor, upon cross-examination, was asked this question:

"State whether or not it is a fact that at the time you gave the new note to your father, he retained the La Moree note and mortgage as security for that portion of the new note which represented the two notes above mentioned for $250 and $1,500, respectively, and at the same time you gave to your father other and additional security for the balance of the new note?"

To which he replied:

"He did not keep the La Moree note and mortgage as security for any portion of my note to him, nor did he get any other security or collateral from me to secure the note I gave him. My father stated to me that he gave me this money as an advancement from his estate, as he considered that he had given other members of the family their share at the time of their marriage in the nature of a dowry, and inasmuch as I needed the money then, he would make me the advancement."

After a consideration of the evidence we think the trial court was fully justified in finding that the son's notes to the bank had been paid and canceled, and that neither the father nor his estate had any interest in the La Moree note, and, of course, the plaintiff could have no better claim by virtue of this assignment thereof. The decree is therefore affirmed.    AFFIRMED.

McBRIDE, C. J., and HARRIS and BURNETT, JJ., concur.